# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                                            Case No.:    3:94-cr-169-HLA-MCR

JERRY LAYNE CANTY

_____/

## ORDER

Before the Court is Defendant Jerry Layne Canty's Motion for Compassionate Release (Doc. 265, Motion). In 1995, when Canty was 44 years old, he was convicted and sentenced for conspiracy to distribute cocaine and cocaine base, aiding and abetting the possession of cocaine base with intent to distribute, and the possession with intent to distribute cocaine base. (Doc. 125, Judgment). Because the United States filed an information under 21 U.S.C. § 851 charging that Canty had two or more prior convictions for a felony drug offense, he was subject to a mandatory term of life imprisonment. 21 U.S.C. § 841(b)(1)(A) (1995); (see also Doc. 250, First Step Act Memorandum and PSR at ¶¶ 2, 99).[1]

---

[1] When Canty was convicted, the United States Supreme Court had not yet decided Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 570 U.S. 99 (2013). As such, the drug quantity neither had to be alleged in the indictment nor proved beyond a reasonable doubt. Based on the law at the time, the Court found that Canty's offenses involved the requisite quantities of cocaine and cocaine base to trigger § 841(b)(1)(A)'s penalties.

1

Canty is now a 70-year-old inmate imprisoned at Springfield MCFP. He has been incarcerated for more than 26 years. He seeks release from prison under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), because he is an elderly inmate in declining health and, in part, because of the Covid-19 pandemic. Canty contracted Covid-19 in December 2020 and eventually recovered. However, he suffers from several serious health issues, including end-stage renal disease, HIV, type 2 diabetes, heart disease, hypertension, and chronic hepatitis C. Due to a hip fracture suffered in May 2020, Canty ambulates with the assistance of a walker.

The United States opposes the Motion because it argues that Canty recovered from Covid-19, that Canty's medical conditions are well-managed at Springfield MCFP, and that Canty has not demonstrated that he has a viable release plan. (Doc. 269, Response). The United States also argues that Canty is a danger to the community and that the § 3553(a) factors do not support a reduction in sentence. In his Reply brief (Doc. 272) and Supplement (Doc. 273), Canty explains that he has developed a solidified release plan, which is to reside with a family friend who has agreed to assist Canty with his medical needs.

For the reasons set forth below, the Court finds that Canty's request for compassionate release is due to be granted.

### I. Compassionate Release

Generally speaking, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), provides one avenue for reducing an otherwise final sentence.

Before passage of the First Step Act of 2018, section 3582(c)(1)(A) left it to the sole discretion of the BOP Director whether to move for compassionate release, and the Director's refusal to do so was judicially unreviewable. See Cruz-Pagan v. Warden, FCC Coleman Low, 486 F. App'x 77, 79 (11th Cir. 2012). But in 2013, the Office of Inspector General for the Department of Justice reported that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Dep't of Justice, Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf.

Perhaps in response to the BOP's failure to properly manage the compassionate release program, Congress devoted part of the First Step Act to "increasing the use and transparency of compassionate release." First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), § 603(b). As a result of the new law,

3

defendants may now move for compassionate release on their own behalf provided that they first satisfy an exhaustion requirement. Section 3582(c)(1)(A), as amended by the First Step Act, now provides:

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

Pursuant to its authority under 18 U.S.C. § 3582(c) and 28 U.S.C. § 994, the United States Sentencing Commission promulgated a policy statement governing the circumstances when compassionate release is appropriate. See U.S.S.G. § 1B1.13. The policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> **(1)** **(A)** Extraordinary and compelling reasons warrant the reduction; or

4

> **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> **(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The Sentencing Commission has not updated the policy statement since the First Step Act became law.

The commentary accompanying the policy statement instructs that "extraordinary and compelling reasons" exist under certain enumerated circumstances. U.S.S.G. § 1B1.13, cmt. 1. As relevant here, these circumstances include:

> **(A) Medical Condition of the Defendant.—**
>
>> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> ….
>
> **(B) Age of the Defendant.—** The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

Id., cmt. 1(A), (B).[2]

When a defendant moves for compassionate release on his own behalf, the compassionate release statute contains an exhaustion requirement. A district court can reduce the term of imprisonment "upon motion of the defendant" only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). As the Sixth Circuit Court of Appeals has held, "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days [of submitting a request to the warden], no matter the appeals available to them." United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020); accord United States v. Smith, 482 F. Supp. 3d 1218, 1222–24 (M.D. Fla. 2020).

---

[2] The Court recognizes that several circuit courts have concluded that U.S.S.G. § 1B1.13 does not apply to defendant-initiated motions for compassionate release, and therefore does not bind district courts. United States v. Brooker, 976 F.3d 228 (2d Cir. 2020); United States v. McCoy, 981 F.3d 271 (4th Cir. 2020); United States v. Shkambi, No. 20–40543, 2021 WL 1291609 (5th Cir. Apr. 7, 2021) (published); United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178 (7th Cir. 2020); United States v. Aruda, No. 20–10245, 2021 WL 1307884 (9th Cir. Apr. 8, 2021) (published); United States v. McGee, No. 20–5047, 2021 WL 1168980 (10th Cir. Mar. 29, 2021) (published). The Eleventh Circuit Court of Appeals has not yet ruled on this issue, though the matter is pending in several cases. The Court need not resolve that issue here. For purposes of this Order, the Court assumes that the policy statement is still binding. If it is not binding, such that the Court has greater flexibility to act, its decision would be the same.

## II. Canty Has Satisfied the Exhaustion Requirement

The United States concedes that Canty has satisfied the statutory exhaustion requirement, Response at 5, and the Court agrees. Canty submitted a request for compassionate release to the warden of his facility on May 8, 2019, and the warden denied the request on June 3, 2019. (See id.). Because more than 30 days passed between when Canty submitted the request and when he filed the Motion, he has satisfied § 3582(c)(1)(A)'s 30-day exhaustion alternative.

## III. Canty Has Shown Extraordinary and Compelling Reasons Warranting Compassionate Release

The United States also concedes that Canty has demonstrated extraordinary and compelling reasons for compassionate release, Response at 5–8, and the Court agrees as well. Specifically, the Court finds that Canty has demonstrated extraordinary and compelling circumstances on two separate bases: (1) his medical condition, per U.S.S.G. § 1B1.13, cmt. 1(A), and (2) his advanced age, deteriorating health, and time served, per § 1B1.13, cmt. 1(B).

First, the Sentencing Commission's policy statement provides that extraordinary and compelling circumstances exist where

> [t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

7

U.S.S.G. § 1B1.13, cmt. 1(A)(i) (emphasis added). The medical records reflect that Canty has been diagnosed with end-stage renal disease and that he undergoes dialysis several times a week. (Doc. 265-1, Exhibit A at 3, 11; Doc. 265-4, Exhibit D at 1, 5). Although Canty has fortunately outlived a 2013 prognosis of 12 to 24 months left to live (Doc. 265-6, Exhibit F at 2), his renal disease has an end-of-life trajectory. Accordingly, Canty has demonstrated that he suffers from a serious medical or physical condition within the meaning of U.S.S.G. § 1B1.13, cmt. 1(A)(i).

In addition, the policy statement provides that the "Age of the Defendant" may qualify as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13, cmt. 1(B). The prisoner's age makes him eligible for early release if he meets three criteria: (i) the inmate "is at least 65 years old"; (ii) the inmate "is experiencing a serious deterioration in physical or mental health because of the aging process"; and (iii) the inmate "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id. Canty obviously meets the first and third criteria: he is 70 years old and has served more than 26 years in prison. The record also establishes that he meets the second criterion of "serious deterioration in physical or mental health because of the aging process." Canty suffers from a litany of ailments, including end-stage renal disease, chronic viral hepatitis C, type 2 diabetes, hypertension, ischemic cardiomyopathy (a type of heart disease), and HIV. (See

8

Exhibit A). Canty undergoes dialysis for his renal disease, which has an end-of-life trajectory. Moreover, in May 2020 he fell and fractured his left hip, "requiring physical therapy and resulting in his being confined to a wheelchair for a period until he was able to begin using a walker." Response at 7. Thus, Canty has shown that he is experiencing a serious decline in physical health due to the aging process.

The United States argues that Canty does not qualify for compassionate release based on Covid-19 because he contracted and recovered from Covid-19 in December 2020. Response at 8–10. However, the Court finds that Canty has demonstrated extraordinary and compelling circumstances independent of, and without regard to, the Covid-19 pandemic.

The United States also argues that Canty has not set forth a verified release plan and that he has received quality healthcare at Springfield MCFP. Id. at 10–12. Canty recently presented a solidified release proposal, which includes a plan to ensure he has access to medical treatment. (Doc. 273, Supplement). The Probation Office can verify this release plan before Canty is released from custody, and the Court can extend the effective date of this Order if additional time is required to establish a suitable plan. While the quality of healthcare at a BOP facility is a valuable consideration, there is no statutory requirement that a movant for compassionate release prove that the quality of healthcare at his facility is lacking. And in terms of considering the need to

9

provide the defendant with needed medical care, see 18 U.S.C. § 3553(a)(2)(D), this is just one factor among many that the Court must weigh and consider.

In view of all the facts, the Court finds that Canty has demonstrated extraordinary and compelling reasons for compassionate release for at least two independent reasons. First, he is suffering from an end-stage organ disease with a terminal trajectory. U.S.S.G. § 1B1.13, cmt. 1(A)(i). Second, he is over 65 years old, suffering from deteriorating physical health because of the aging process, and he has served more than 10 years in prison. Id., cmt. 1(B). Thus, Canty is eligible for compassionate release.

## IV. Canty is Not a Danger to the Community

The Court next considers whether Canty is a danger to the safety of another person or to the community, as provided by 18 U.S.C. § 3142(g). See U.S.S.G. § 1B1.13(2). In doing so, the Court considers such factors as "the nature and circumstances of the offense charged," "the weight of the evidence against the person," the "history and characteristics of the person," including the person's "mental and physical condition," as well as "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

The offenses of conviction were serious, to be sure. Canty was convicted of three violations of the Controlled Substances Act, each involving cocaine or cocaine base. At sentencing, the Court held Canty accountable for 23.17

kilograms of cocaine base and 4.27 kilograms of powder cocaine. (First Step Act Memo at p. 2; PSR at ¶ 15). And Canty had a lengthy criminal record preceding the instant offenses (PSR at ¶¶ 29–55), which unfortunately "is similar to many of the defendants charged with crack cocaine offenses in the Middle District," Motion at 3. Canty first became involved with the criminal justice system at age 12 when he ran away from home, and he has remained entangled with the criminal justice system since then. Most of Canty's convictions were for nonviolent offenses involving controlled substances, theft, or forgery, but he did have three convictions for violent crimes: a 1968 conviction at age 17 for assault and battery on a minor child (id. at ¶ 37), a 1981 conviction at age 30 for aggravated assault involving a police officer (id. at ¶ 49), and another 1981 conviction at age 30 for robbery with a firearm (id. at ¶ 54). However, the last of these convictions for a violent crime is four decades old, and Canty paid the penalty for those offenses in state prison. Moreover, the Court considers that Canty's past struggles with mental health and drug addiction may have contributed to his criminal record. (See id. at ¶¶ 86, 88 (noting that Canty has "an extensive history of drug addiction and substance abuse treatment that began when he was approximately 10 years of age.")). At age 70 and in declining health, Canty is not the same person he was at age 17 or 30.

    At least three reasons persuade the Court that Canty does not pose a danger to the safety of another person or the community. First is Canty's

11

declining physical condition. As noted already, Canty suffers from end-stage renal disease in addition to myriad other ailments. He requires routine renal dialysis and, after fracturing his left hip in May 2020, he ambulates with a walker. Canty likely does not have the physical wherewithal to commit a violent crime. Second, Canty's advanced age statistically suggests he is unlikely to recidivate or to commit a violent offense. The Effects of Aging on Recidivism Among Federal Offenders at 3, 23, United States Sentencing Commission (Dec. 2017).[3] According to the Sentencing Commission, offenders aged 65 and older, like Canty, are the least likely to be rearrested, reincarcerated, or reconvicted. Id. at 23. Third, the Court is confident that the conditions of supervised release can control whatever risk Canty presents of committing a new offense. Among other things, Canty will be required to report to a probation officer, to truthfully answer any inquiries by the officer, and to submit to random visits. Canty will know that if he reoffends while on supervised release, he will be subject to the revocation of his supervised release and reimprisonment.

In view of the foregoing, the Court concludes that Canty does not pose a danger to the safety of another person or to the community within the meaning of U.S.S.G. § 1B1.13(2) and 18 U.S.C. § 3142(g).

---

[3] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

### V. The Section 3553(a) Factors Support a Reduction in Sentence

Finally, the Court must consider whether the sentencing factors under 18 U.S.C. § 3553(a) support reducing Canty's sentence. 18 U.S.C. § 3582(c)(1)(A). Such considerations include the nature and circumstances of the offense, the history and characteristics of the defendant, the types of sentences available, as well as the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and promote respect for the law. 18 U.S.C. §§ 3553(a)(1)–(3). In addition, the Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id., § 3553(a)(6). In view of all the applicable § 3553(a) factors, the Court concludes that a reduction is warranted.

The Court has carefully considered the circumstances of the offense and Canty's criminal history. These will often be weighty factors in the § 3553(a) analysis, but they are merely two of the many factors that the Court must weigh and evaluate. Although the offenses of conviction were serious violations of the Controlled Substances Act, Canty was not convicted in the instant case of a violent crime. Although Canty has three prior convictions for crimes that could be described as violent, the last such conviction is 40 years old and occurred when Canty was 30 years of age. As discussed in Section IV, Canty is unlikely

13

to pose a danger to the public or a substantial risk of recidivating, owing to his age, maturity, and physical condition.

Moreover, Canty has been in federal custody for 26 years and five months (or 317 months), dating from when he was detained on November 8, 1994. (Doc. 250 at CM/ECF 6). That is a substantial sentence by any measure. Indeed, it is longer than the sentences sometimes imposed in other courts for such crimes as rape, murder, and manslaughter. There can be no doubt that Canty has served a stiff penalty for his crimes. Given the substantial sentence he has already served, releasing Canty now would by no means minimize the severity of the offense. Now in old age and in declining health, continuing to incarcerate Canty is neither necessary nor warranted to accomplish the statutory purposes of sentencing.

Late in life, Canty seems to have turned a corner in terms of his rehabilitation. Although his overall BOP disciplinary record is hardly perfect – he incurred around 10 disciplinary infractions between 1996 and 2008 – he has incurred only a single infraction in the past 13 years. (See Doc. 265-3, Exhibit C). That one infraction occurred more than four years ago, for an incident on January 13, 2017, when Canty was sanctioned for fighting another inmate. (Id. at 1). Canty admitted the charge, and the record does not indicate that any severe injuries occurred. Other than that incident, Canty has had no disciplinary infractions since January 2008. As reported by his counsel, "[w]hile

14

incarcerated, Mr. Canty has made efforts to prepare himself for his potential release from custody, however unlikely that might have been." Motion at 5. "Despite the grim likelihood of spending the remainder of his life in prison, Mr. Canty has worked towards earning his GED, albeit unsuccessfully, and has taken advantage of courses offered by the BOP." Id. at 22–23. Moreover, Canty "take[s] responsibility for the conduct that led to his charges in this case. He is remorseful and has taken every opportunity available to him to better himself, despite his significant medical conditions." Id. at 23. In his own words, Canty expresses to the Court that he wants to make the best of the life he has left by sharing his story with others, so that they will avoid the pitfalls of drug addiction and crime. (Doc. 259-1, Letter to the Court).

It is further worth noting that if sentenced in 2021, Canty would not have been subject to a mandatory term of life in prison. At the time Canty was sentenced, a district court was required to impose a sentence of life in prison on any person who was held liable under 21 U.S.C. § 841(b)(1)(A) and who had two prior convictions for any felony drug offense. 21 U.S.C. § 841(b)(1)(A) (1995). But those days are gone. Today, following passage of the First Step Act, the maximum recidivist enhancement applicable under 21 U.S.C. § 841(b)(1)(A) is 25 years to life in prison. 21 U.S.C. § 841(b)(1)(A) (2018). Thus, a defendant sentenced today with an identical criminal record, and who committed identical offenses, would not have been subject to a mandatory life sentence. Canty's 26

years and five months in prison certainly exceed the 25-year mandatory minimum sentence that would apply today.

The Court has weighed and evaluated each of the applicable sentencing factors under § 3553(a). In view of all the circumstances, the Court finds that reducing Canty's term of imprisonment to time served is consistent with the statutory goals of sentencing and the applicable policy statements issued by the Sentencing Commission.

## VI.    Conclusion

Canty, now aged 70, was sentenced over 26 years ago to a mandatory term of life imprisonment "under a sentencing regime whose time has passed." Smith, 482 F. Supp. 3d at 1227. Although Canty's sentence was and is lawful, he likely would not receive the same sentence today. Moreover, he has shown that he qualifies for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13.

Accordingly, it is hereby **ORDERED:**

1. Defendant Jerry Layne Canty's Motion for Compassionate Release (Doc. 265) is **GRANTED**.

2. The Court reduces Canty's term of imprisonment to **TIME SERVED**. Otherwise, the terms and conditions set forth in the Judgment (Doc. 125) are unchanged.

3. This Order is stayed for up to **14 days**, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than 14 days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

4. If the United States does not appeal this Order, Canty's Motion to Reduce Sentence Pursuant to Section 404 of the First Step Act (Doc. 256) is **DENIED AS MOOT** in light of this Order.

5. The Court recommends that prison officials place Canty in quarantine pending his release.

**DONE AND ORDERED** at Jacksonville, Florida this 19th day of April, 2021.

BRIAN J. DAVIS
United States District Judge

lc 19

Copies:

Counsel of record
Defendant
United States Probation Office
United States Marshals
United States Bureau of Prisons
Warden, Springfield MCFP